FILED

Name / Nombre: ABUBAKAR ABDUL-SAMED

JAN 2 2 2025

A Number / Número A: 240170023

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

Address / Dirección: 611 Frontage RD Golden State Annex
Mcfarland CA 93250

*PRO SE*

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

ABUBAKAR ABDUL-SAMED
_____
[Full Name / Nombre Completo]

(A# 2 4 0 -17 0 -023 )

                          Petitioner,

          v.

Warden of the *Golden State Annex*
Detention Facility, Current or Acting Field
Office Director, San Francisco Field Office,
United States Immigration  and Customs
Enforcement; Current or Acting Director,
United States Immigration and Customs
Enforcement; Current or Acting Secretary,
United States Department of Homeland
Security; and Current or Acting United States
Attorney General,

                          Respondents.

Case No. 1:25-cv-00098
SAB (HC)

**Petition for Writ of Habeas Corpus**



RECEIVED

JAN 2 2 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241

Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to

remedy Petitioner's unlawful detention by Respondents, as follows:

The judge will likely take several months to make a decision. If your petition is granted, the judge will probably order the government to provide you a bond hearing before an Immigration Judge within a certain period of time. In rare situations, the habeas judge may directly order your release.

*This Pro Se Habeas Packet has been created by immigration and immigrants' rights advocates in northern California, including the ACLU of Northern California (ACLU NorCal), Asian Americans Advancing Justice - Asian Law Caucus (ALC), and the California Collaborative for Immigrant Justice (CCIJ). The guide is for informational purposes only and does not contain legal advice. It was last updated in November 2024.*

**INTRODUCTION**

1.     Petitioner[1] is currently detained by Immigration and Customs Enforcement ("ICE") at the _Golden State Annex_ [*escriba el nombre del centro de detención donde está detenido*] detention center pending removal proceedings.

2.     Petitioner has been detained in immigration custody for over _9 months_ [*escriba el número de meses que ha estado detenido*] months even though no neutral decisionmaker—whether a federal judge or immigration judge ("IJ")—has conducted a hearing to determine whether this lengthy incarceration is warranted based on danger or flight risk.

3.     Petitioner's prolonged detention without a hearing on danger and flight risk violates the Due Process Clause of the Fifth Amendment.

4.     Petitioner therefore respectfully requests that this Court issue a writ of habeas corpus, determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond.

5.     Alternatively, Petitioner requests that the Court issue a writ of habeas corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an IJ where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden, the IJ shall order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond.

---

[1] Petitioner respectfully requests that the Court use his initials, rather than his full last name, in any opinion in his case, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf; *see also Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050 n.1 (N.D. Cal. Apr. 14, 2021).

1

## JURISDICTION

6.    Petitioner is detained in the custody of Respondents at *Golden State Annex*

[*escriba el nombre del centro de detención donde está detenido*] detention center.

7.    This action arises under the Due Process Clause of the Fifth Amendment of the
U.S. Constitution. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question), 2241
(habeas corpus); U.S. Const. art. I, § 2; (Suspension Clause); and 5 U.S.C. § 702 (Administrative
Procedure Act. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et
seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C.
§ 1651.

8.    Congress has preserved judicial review of challenges to prolonged immigration
detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 839-841 (2018) (holding that 8 U.S.C.
§§ 1226(e), 1252(b)(9) do not bar review of challenges to prolonged immigration detention); *see
also id.* at 876 (Breyer, J., dissenting). ("8 U.S.C. § 1252(b)(9) . . . by its terms applies only with
respect to review of an order of removal") (internal quotation marks and brackets omitted).

## VENUE

9.    Venue is proper in this District because this is the district in which Petitioner is
confined. *See Doe v. Garland,* 109 F.4th 1188, 1197-99 (9th Cir. 2024).

## REQUIREMENTS OF 28 U.S.C. § 2243

10.    The Court must grant the petition for writ of habeas corpus or issue an order to
show cause ("OSC") to Respondents "forthwith," unless Petitioner is not entitled to relief. 28
U.S.C. § 2243. If the Court issues an OSC, it must require Respondents to file a return "within
*three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*
(emphasis added).

11.    Courts have long recognized the significance of the habeas statute in protecting
individuals from unlawful detention. The Great Writ affords "*a swift and imperative remedy* in
all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis

1   added); *see also Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (explaining that habeas statute

2   requires expeditious determination of petitions).

**PARTIES**

3

4       12.    Petitioner is a noncitizen currently detained by Respondents pending ongoing

5   removal proceedings.

6       13.    Respondent Warden of the *Golden State Annex* [*escriba el nombre del centro*

7   *de detención donde está detenido*] Detention Facility is Petitioner's immediate custodian at the

8   facility where Petitioner is detained. *See Doe,* 108 F.4th at 1194-97.

9       14.    Respondent Secretary of the U.S. Department of Homeland Security ("DHS"), an

10   agency of the United States, is responsible for the administration of the immigration laws. 8

11   U.S.C. § 1103(a). They are a legal custodian of Petitioner. They are named in their official

12   capacity.

13       15.    Respondent Acting or Current Attorney General of the United States is the most

14   senior official in the U.S. Department of Justice ("DOJ"). They have the authority to interpret the

15   immigration laws and adjudicate removal cases. They delegate this responsibility to the

16   Executive Office for Immigration Review ("EOIR"), which administers the immigration courts

17   and the Board of Immigration Appeals ("BIA"). They are named in their official capacity.

18       16.    Respondent Acting or Current Field Office Director of the San Francisco ICE

19   Field Office is responsible for the San Francisco Field Office of ICE with administrative

20   jurisdiction over Petitioner's case. They are a legal custodian of Petitioner and are named in their

21   official capacity.

22       17.    Respondent Acting or Current Director of ICE is responsible for ICE's policies,

23   practices, and procedures, including those relating to the detention of immigrants. They are a

24   legal custodian of Petitioner and are named in their official capacity.

**STATEMENT OF FACTS**

25

26       18.    Petitioner is a noncitizen currently detained by Respondents pending immigration

27   removal proceedings. Petitioner is pursuing the following claims in removal proceedings [*escriba*

28

4

1  *todos los aplicaciones de alivio que usted esta presentando en su caso de deportacion*]:

2  Application for asylum

3  Withholding of removal

4  Convention Against Torture

5      19.    Petitioner has been detained in DHS custody since    03/2024

6  [*escriba el mes y año en que comenzó su detención por ICE*].

7      20.    Petitioner has not been provided a bond hearing before a neutral decisionmaker to

8  determine whether their prolonged detention is justified based on danger or flight risk.

9      21.    The Immigration Court lacks jurisdiction and authority to provide Petitioner with

10  a bond hearing to determine whether Petitioner's detention is justified. *See* 8 U.S.C. §§ 1225(b);

11  1226(c). There is no statutory or regulatory pathway for Petitioner to seek a bond hearing before

12  a neutral decisionmaker.

13      22.    Absent intervention by this Court, Petitioner cannot and will not be provided with

14  a bond hearing by a neutral decisionmaker to assess the propriety of Petitioner's continued

15  detention.

16      23.    Additional facts that support Petitioner's entitlement to relief are [*escriba datos*

17  *adicionales sobre su detención que desee que el juez sepa*]:

18  I have requested for a bond hearing two (2) times and the first

19  hearing which was on the 22 August 2024, the Judge said

20  she can not give me a bond because I am an arriving alien.

21      And the second attempt also, I was given a notice on

22  12/03/24, which the Judge said I have not established a

23  change of circumstances since this hearing. Moreover, I am

24  still an arriving alien.

25      I have been diagnosed of high blood pressure here in

26  detention all because of the situation that I am now. I am not

27  a criminal, I only came to the United state to save myself

28

## CONTINUATION OF PARAGRAGH 23.

but now I have myself In a situation that, I feel Like I am a criminal who has been Imprisoned, which Is affecting my mental health.

I wake up everyday with so much stress thinking about what Is going to happen to me here.

What first comes to my mind Is, are they going to send me back to my country which I fear going back to?

Now I feel like I am stucked here In detention and there Is nothing for me to do to save myself from the situation.

The Judge always gives me more time to get an Attorney so he can procceed with my hearing. but I never gets the chance to have One.

All I want Is to be released to my sponsor who Is a very good family-friend of mine here In america with the address below.

Sumaila Sadia,
2060 Anthony Av 4B,
Bronx-NY10457,
Phone (9178913437),

She Is willing to take care of me and provide for me till my court proceedings are over.

In that way I can have atleast a peace of mind and also In a good health knowing I am safe and also a good future awaits me.

I am willing to accept any alternatives to detention if I am released to my sponsor, Including electronic monitoring and also willing to check In with a parole officer if I am released.

1  from being tortured and killed in my country to get protection
2  here in the United State.
3    There is a lot of killing of people in where I came from
4  "Bawku" in Ghana, which is between two tribes. the Kusasi
5  and the Mamprusi tribe who are fighting for power to be the
6  rulers of bawku. I came from the royal family of the
7  Kusasi tribe. which my uncle is a chief.
8    I was chased by some people from the other tribe which
9  Is the Mamprusi tribe. they wanted to eliminate me all
10  because I am from the Kusasi tribe and my uncle is the
11  chief and also he has the power of bawku which they
12  wanted for themself.
13    I was lucky to escape that day from them in the bush where
14  I took my farm animals to feed. I fell and broke my finger
15  that day in the proccess of running to save my life. I
16  experienced the same attack the second time, which I realized
17  I had to rum away from all that circumstances surrounding
18  my life at that moment.
19    Inocent lives are being lost everyday in bawku, even
20  those who are not from a royal family or even from either
21  of these two tribes. So I was very desperate to run, and
22  somehow found myself here in the United State.

23    **LEGAL BACKGROUND**

24.    "'It is well established that the Fifth Amendment entitles [noncitizens] to due
process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting
*Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government
custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the

1    Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id.* at 718

2    (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against

3    unlawful or arbitrary personal restraint or detention."). This fundamental due process protection

4    applies to all noncitizens, including both removable and inadmissible noncitizens. *See id.* at 721

5    (Kennedy, J., dissenting) ("[B]oth removable and inadmissible [noncitizens] are entitled to be

6    free from detention that is arbitrary or capricious").

7        25.    Due process requires "adequate procedural protections" to ensure that the

8    government's asserted justification for physical confinement "outweighs the individual's

9    constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690

10   (internal quotation marks omitted). In the immigration context, the Supreme Court has

11   recognized only two valid purposes for civil detention—to mitigate the risks of danger to the

12   community and to prevent flight. *Id.*; *Demore*, 538 U.S. at 528.

13       26.    Due process requires that the government provide bond hearings to noncitizens

14   facing prolonged detention. "The Due Process Clause foresees eligibility for bail as part of due

15   process" because "[b]ail is basic to our system of law." *Jennings*, 138 S. Ct. at 862 (Breyer, J.,

16   dissenting) (internal quotation marks omitted). While the Supreme Court upheld the mandatory

17   detention of a noncitizen under Section 1226(c) in *Demore*, it did so based on the petitioner's

18   concession of deportability and the Court's understanding at the time that such detentions are

19   typically "brief." *Demore*, 538 U.S. at 522 n.6, 528. Where a noncitizen has been detained for a

20   prolonged period or is pursuing a substantial defense to removal or claim to relief, due process

21   requires an individualized determination that such a significant deprivation of liberty is

22   warranted. *Id.* at 532 (Kennedy, J., concurring) ("[I]ndividualized determination as to his risk of

23   flight and dangerousness" may be warranted "if the continued detention became unreasonable or

24   unjustified"); *see also Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (holding that detention

25   beyond the "initial commitment" requires additional safeguards); *McNeil v. Dir., Patuxent Inst.*,

26   407 U.S. 245, 249-50 (1972) (holding that "lesser safeguards may be appropriate" for "short-

27   term confinement"); *Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) (holding that, in the Eighth

28

7

Amendment context, "the length of confinement cannot be ignored in deciding whether [a] confinement meets constitutional standards"); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (holding that "the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention" under section 1226(c)) (internal quotation marks omitted).

## A.    Detention That Exceeds Six Months Without A Bond Hearing Is Unconstitutional.

27.    Detention without a bond hearing is unconstitutional when it exceeds six months. *See Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions under Section 1226(c), which last "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal"); *Zadvydas*, 533 U.S. at 701 ("Congress previously doubted the constitutionality of detention for more than six months."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1091 (9th Cir. 2022) ("[O]nce the [noncitizen] has been detained for approximately six months, continuing detention becomes prolonged" (cleaned up) (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011))); *Rodriguez v. Nielsen*, Case No. 18-CV-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) ("[D]etention becomes prolonged after six months and entitles [Petitioner] to a bond hearing").

28.    The recognition that six months is a substantial period of confinement—and is the time after which additional process is required to support continued incarceration—is deeply rooted in our legal tradition. With few exceptions, "in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term." *Duncan v. Louisiana*, 391 U.S. 145, 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a benchmark in other contexts involving civil detention. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as an outer limit for confinement without

1   individualized inquiry for civil commitment). The Court has likewise recognized the need for

2   bright line constitutional rules in other areas of law. *See Maryland v. Shatzer*, 559 U.S. 98, 110

3   (2010) (holding that 14 days must elapse following invocation of *Miranda* rights before re-

4   interrogation is permitted); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991) (holding

5   that a probable cause hearing must take place within 48 hours of warrantless arrest).

6

7   **B.      Even Absent A Bright-Line Six-Month Standard, An Individualized Bond Hearing Is Required When Detention Becomes Unreasonably Prolonged.**

8        29.     Petitioner's detention, without *any* individualized review, is unreasonable under

9   the *Mathews v. Eldridge* due process test. Alternatively, Petitioner prevails under the multi-factor

10   reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional*

11   *Facility*, 965 F.3d 203, 211 (3d Cir. 2020).

12        30.     Each year, thousands of noncitizens are incarcerated for lengthy periods pending

13   the resolution of their removal proceedings. *See Jennings*, 138 S. Ct. at 860 (Breyer, J.,

14   dissenting) (observing that class members, numbering in the thousands, had been detained "on

15   average one year" and some had been detained for several years). For noncitizens who have

16   some criminal history, their immigration detention often dwarfs the time spent in criminal

17   custody, if any. *Id.* ("between one-half and two-thirds of the class served [criminal] sentences

18   less than six months").

19        31.     Petitioner faces severe hardships while detained by ICE. Petitioner is held in a

20   locked down facility, with limited freedom of movement and access to Petitioner's family or

21   support network: "[T]he circumstances of their detention are similar, so far as we can tell,

22   to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting); *accord*

23   *Chavez–Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015); *Ngo v. INS*, 192

24   F.3d 390, 397-98 (3d Cir. 1999); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218, 1221 (11th Cir.

25   2016). "And in some cases the conditions of their confinement are inappropriately poor"

26   including, for example, "invasive procedures, substandard care, and mistreatment, *e.g.*,

27   indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case

28

9

1  of one detainee, a multiday lock down for sharing a cup of coffee with another detainee."

2  *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting) (citing Press Release, Off. of Inspector Gen.,

3  Dept. of Homeland Sec., *DHS OIG Inspection Cites Concerns With Detainee Treatment and*

4  *Care at ICE Detention Facilities* (Dec. 14, 2017)); *see also* Tom Dreisbach, *Government's own*

5  *experts found 'barbaric' and 'negligent' conditions in ICE detention*, NPR (Aug. 16, 2023, 5:01

6  AM) (reporting on the "'negligent' medical care (including mental health care), 'unsafe and

7  filthy' conditions, racist abuse of detainees, inappropriate pepper-spraying of mentally ill

8  detainees and other problems that, in some cases, contributed to detainee deaths" contained in

9  inspection reports prepared by experts from the Department of Homeland Security's Office for

10  Civil Rights and Civil Liberties after examining detention facilities between 2017 and 2019).

11  Individuals at Golden State Annex Detention Facility have described receiving food

12  contaminated with insects (including cockroaches, flies, and spiders), hair, and other foreign

13  objects. *See* California Collaborative for Immigrant Justice, *Starving for Justice: The Denial of*

14  *Proper Nutrition in Immigration Detention,* at p. 7 (April 2022), *available at*

15  https://www.ccijustice.org/_files/ugd/733055_c43b1cbbdda341b894045940622a6dc3.pdf. At

16  Mesa Verde Detention Facility, over 80% of detained individuals who responded to one survey

17  said they had received expired food. *Id.*

18          32.     The *Mathews* test for procedural due process claims balances: (1) the private

19  interest threatened by governmental action; (2) the risk of erroneous deprivation of such interest

20  and the value of additional or substitute safeguards; and (3) the government interest. *Mathews v.*

21  *Eldridge*, 424 U.S. 319, 335 (1976); *see also Sho v. Current or Acting Field Off. Dir.,* No. 1:21-

22  CV-01812 TLN AC, 2023 WL 4014649, at *3 (E.D. Cal. June 15, 2023), *report and*

23  *recommendation adopted*, No. 1:21-CV-1812-TLN-AC, 2023 WL 4109421 (E.D. Cal. June 21,

24  2023) (applying *Mathews* factors to a habeas petitioner's due process claims and collecting cases

25  doing the same). Here, each factor weighs in Petitioner's favor, requiring this Court to promptly

26  hold a hearing to evaluate whether the government can justify their ongoing detention.

27          33.     First, Petitioner indisputably has a weighty interest in their liberty, the core

28

1  private interest at stake here. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment... lies at

2  the heart of the liberty [the Due Process Clause] protects."). Petitioner, who is being held in

3  "incarceration-like conditions," has an overwhelming interest here, regardless of the length of his

4  immigration detention, because "any length of detention implicates the same" fundamental

5  rights. *Rajnish v. Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec.

6  22, 2020).

7       34.    Second, Petitioner will suffer the erroneous risk of deprivation of their liberty

8  without an individualized evidentiary hearing. The risk of erroneous deprivation of their liberty

9  is high, as they have been detained since    *03/2024*     [*escriba el mes y año en*

10  *que comenzó su detención por ICE*] without any evaluation of whether the government can

11  justify detention under their individualized circumstances. "[T]he risk of an erroneous

12  deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial."

13  *Diouf*, 634 F.3d at 1092. Conversely, "the probable value of additional procedural safeguards—

14  an individualized evaluation of the justification for his detention—is high, because Respondents

15  have provided virtually no procedural safeguards at all." *Jimenez v. Wolf*, No. 19-cv-07996-NC,

16  2020 WL 510347, *3 (N.D. Cal. Jan. 30, 2020) (granting habeas petition for person who had

17  been detained for one year without a bond hearing).

18       35.    Third, the government's interest is very low in continuing to detain Petitioner

19  without providing any neutral review. *See Mathews*, 424 U.S. at 335. The specific interest at

20  stake here is not the government's ability to continue to detain Petitioner, but rather the

21  government's ability to continue to detain them for months on end without any individualized

22  review. *See Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019); *Henriquez v.*

23  *Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022). The

24  cost of providing an individualized inquiry is minimal. *See Henriquez*, 2022 WL 2132919, at *5.

25  The government has repeatedly conceded this fact. *See Lopez Reyes v. Bonnar*, 362 F. Supp. 3d

26  762, 777 (N.D. Cal. 2019); *Singh v. Barr*, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019);

27  *Marroquin Ambriz*, 420 F. Supp. 3d at 964.

28

36.     In sum, the *Mathews* factors establish that Petitioner is entitled to an evidentiary hearing before a neutral adjudicator. Unsurprisingly, courts applying these standards in this Circuit have repeatedly held that prolonged detention without a hearing before a neutral adjudicator violates procedural due process. *See, e.g., Romero Romero v. Wolf*, No. 20-CV-08031-TSH, 2021 WL 254435, at *2, *5 (N.D. Cal. Jan. 26, 2021) (holding that the petitioner's detention of just over one year without a custody hearing was "not compatible with due process" and granting habeas); *Jimenez*, 2020 WL 510347, at *1, *2, *4 (holding that the petitioner's detention of just over one year without a custody hearing violated his due process rights and granting habeas); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *1, *5 (N.D. Cal. Jan. 25, 2019) (holding that the petitioner's detention for just over one year without a custody hearing violates his due process rights and granting habeas); *see also Singh v. Garland*, No. 1:23-cv-01043-EPG-HC, 2023 WL 5836048, at *6 (E.D. Cal. 2023); *Sho v. Current or Acting Field Office Director*, No. 1:21-cv-01812-TLN-AC, 2023 WL 4014649 (E.D. Cal. 2023). This Court should so hold as well.

37.     *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), does not disturb this result. In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test to hold that the detention of a noncitizen detained under a different detention statute, 8 U.S.C. § 1226(a), did not violate procedural due process. 53 F.4th at 1195. Unlike Sections 1225(b) and 1226(c), § 1226(a) mandates that detained individuals receive an individualized bond hearing at the outset of detention and provides for further bond hearings upon a material change in circumstances. *See* 8 C.F.R. § 1003.19(e). The panel's decision in *Rodriguez Diaz* was predicated on the immediate and ongoing availability of this administrative process under § 1226(a). 53 F.4th at 1202 ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions . . . ."). Unlike the petitioner in *Rodriguez Diaz*, Petitioner has no statutory access to individualized review of his detention.

38.     Alternatively, courts that apply a reasonableness test have considered four non-exhaustive factors in determining whether detention is reasonable. *German Santos v. Warden*

1   *Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-22 (3d Cir. 2020). The reasonableness inquiry is

2   "highly fact specific." *Id.* at 210. "The most important factor is the duration of detention." *Id.* at

3   211; *see also Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *1, *5 (N.D.

4   Cal. Jan. 25, 2019) (concluding that the petitioner's detention for just over one year without a

5   custody hearing weighed strongly in favor of finding detention unreasonable, and violated his

6   due process rights and granting habeas). Duration is evaluated along with "all the other

7   circumstances," including (1) whether detention is likely to continue, (2) reasons for the delay,

8   and (3) whether the conditions of confinement are meaningfully different from criminal

9   punishment. *Id.* at 211.

10        39.     As noted, Petitioner has been detained for a substantial length of time, *supra* ¶ 20

11   and Petitioner's detention is likely to continue as Petitioner asserts their right to seek

12   immigration relief, *supra* ¶ 19. Noncitizens should not be punished for pursuing "legitimate

13   proceedings" to seek relief. *See Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3

14   (N.D. Cal. Jan. 8, 2020) ("[I]t ill suits the United States to suggest that [Petitioner] could shorten

15   his detention by giving up these rights and abandoning his asylum application."). Thus, courts

16   should not count a continuance against the noncitizen when they obtained it in good faith to

17   prepare their removal case, including efforts to obtain counsel. *See Hernandez Gomez*, 2023 WL

18   2802230, at *4 ("The duration and frequency of these requests [for continuances] do not

19   diminish his significant liberty interest in his release or his irreparable injury of continued

20   detention without a bond hearing."). Moreover, Petitioner's confinement and experiences at a

21   facility operated by a private, for-profit prison contractor, demonstrate that their conditions of

22   confinement are not meaningfully different from those of criminal punishment. *See supra* ¶¶ 10,

23   24, 32.

24       **C.**     **At Any Hearing, The Government Must Justify Ongoing Detention By Clear And Convincing Evidence.**

25

26        40.     At a bond hearing, due process requires certain minimum protections to ensure

27   that a noncitizen's detention is warranted: the government must bear the burden of proof by

28

1  clear and convincing evidence to justify continued detention, taking into consideration available

2  alternatives to detention: and. if the government cannot meet its burden. the noncitizen's ability

3  to pay a bond must be considered in determining the appropriate conditions of release.

4       41.     To justify prolonged immigration detention, the government must bear the

5  burden of proof by clear and convincing evidence that the noncitizen is a danger or flight risk.

6  *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Aleman Gonzalez v. Barr*, 955 F.3d

7  762, 781 (9th Cir. 2020), *rev'd on other grounds by Garland v. Aleman Gonzalez*, 142 S. Ct.

8  2057, 213 L. Ed. 2d 102 (2022) ("*Jennings*'s rejection of layering [the clear and convincing

9  burden of proof standard] onto § 1226(a) as a matter of statutory construction cannot . . .

10  undercut our constitutional due process holding in *Singh*."); *Sho*, 2023 WL 4014649, at *5

11  (applying *Singh* and holding that the government shall bear the burden in a constitutionally

12  required bond hearing to remedy detention under a different statutory provision); *Singh,* 2023

13  WL 5836048, at *9 (same); *Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2

14  (N.D. Cal. Jan. 10, 2023) (same); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL

15  2744397, at *7 (N.D. Cal. Mar. 31, 2023) (same); *Hernandez Gomez v. Becerra*, No. 23-CV-

16  01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023) (same); *Martinez Leiva v.*

17  *Becerra*, No. 23-CV-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023); *I.E.S. v.*

18  *Becerra*, No. 23-CV-03783-BLF, 2023 WL 6317617, at *10 (N.D. Cal. Sept. 27, 2023) (same);

19  *Singh Grewal v. Becerra,* No. 23-CV-03621-JCS, 2023 WL 6519272, at *8 (N.D. Cal. Oct. 4,

20  2023) (same); *Gomez v. Becerra*, No. 23-CV-03724-JCS, 2023 WL 6232236, at *9 (N.D. Cal.

21  Sept. 25, 2023) (same); *Henriquez v. Garland*, No. 23-CV-01025-AMO, 2023 WL 6226374, at

22  *4 (N.D. Cal. Sept. 25, 2023) (same); *Rodriguez Picazo v. Garland*, No. 23-CV-02529-AMO,

23  2023 WL 5352897, at *7 (N.D. Cal. Aug. 21, 2023) (same).

24       42.     Where the Supreme Court has permitted civil detention in other contexts, it has

25  relied on the fact that the Government bore the burden of proof by at least clear and convincing

26  evidence. *See United States v. Salerno*, 481 U.S. 739, 750, 752 (1987) (upholding pre-trial

27  detention after a "full-blown adversary hearing" requiring "clear and convincing evidence" and

28

1  "a neutral decisionmaker"); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (striking down

2  civil detention scheme that placed burden on the detainee); *Zadvydas*, 533 U.S. at 692 (finding

3  post-final-order custody review procedures deficient because, *inter alia*, they placed burden on

4  detainee).

5      43.    The requirement that the government bear the burden of proof by clear and

6  convincing evidence is also supported by application of the three-factor balancing test from

7  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). First, "an individual's private interest in

8  'freedom from prolonged detention' is 'unquestionably substantial.'" *See Rodriguez Diaz*, 53

9  F.4th at 1207 (citing *Singh*, 638 F.3d at 1208). Second, the risk of error is great where the

10  government is represented by trained attorneys and detained noncitizens are often unrepresented

11  and may lack English proficiency. *See Santosky v. Kramer*, 455 U.S. 745, 763 (1982) (requiring

12  clear and convincing evidence at parental termination proceedings because "numerous factors

13  combine to magnify the risk of erroneous factfinding" including that "parents subject to

14  termination proceedings are often poor, uneducated, or members of minority groups" and "[t]he

15  State's attorney usually will be expert on the issues contested"). Moreover, detained noncitizens

16  are incarcerated in prison-like conditions that severely hamper their ability to obtain legal

17  assistance, gather evidence, and prepare for a bond hearing. *See supra* ¶ 32. Third, placing the

18  burden on the government imposes minimal cost or inconvenience to it, as the government has

19  access to the noncitizen's immigration records and other information that it can use to make its

20  case for continued detention.

21      **D.**    **Due Process Requires Consideration Of Alternatives To Detention.**

22      44.    Due process also requires consideration of alternatives to detention. The primary

23  purpose of immigration detention is to ensure a noncitizen's appearance during civil removal

24  proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to this purpose if

25  there are alternative conditions of release that could mitigate risk of flight. *See Bell v. Wolfish*,

26  441 U.S. 520, 538–39 (1979) (civil pretrial detention may be unconstitutionally punitive if it is

27  excessive in relation to its legitimate purpose). ICE's alternatives to detention program—the

28

1   Intensive Supervision Appearance Program—has achieved extraordinary success in ensuring

2   appearance at removal proceedings, reaching compliance rates close to 100 percent. *Hernandez*

3   *v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (observing that ISAP "resulted in a 99%

4   attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"). Thus,

5   alternatives to detention must be considered in determining whether prolonged incarceration is

6   warranted.

7       45.    Due process likewise requires consideration of a noncitizen's ability to pay a

8   bond. "Detention of an indigent 'for inability to post money bail' is impermissible if the

9   individual's 'appearance at trial could reasonably be assured by one of the alternate forms of

10  release.'" *Hernandez*, 872 F.3d at 990 (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th

11  Cir. 1978) (en banc)). Therefore, when determining the appropriate conditions of release for

12  people detained for immigration purposes, due process requires "consideration of financial

13  circumstances and alternative conditions of release." *Id.*; *see also Martinez v. Clark*, 36 F.4th

14  1219, 1231 (9th Cir. 2022) ("While the government had a legitimate interest in protecting the

15  public and ensuring the appearance of noncitizens in immigration proceedings, we held [in

16  *Hernandez*] that detaining an indigent alien without consideration of financial circumstances

17  and alternative release conditions was 'unlikely to result' in a bond determination 'reasonably

18  related to the government's legitimate interests.' (citation omitted).").

19                      **CLAIM FOR RELIEF**

20  **VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO**

21                      **THE U.S. CONSTITUTION**

22      46.    Petitioner re-alleges and incorporates by reference the paragraphs above.

23      47.    The Due Process Clause of the Fifth Amendment forbids the government from

24  depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

25      48.    To justify Petitioner's ongoing prolonged detention, due process requires that the

26  government establish, at an individualized hearing before a neutral decisionmaker, that

27  Petitioner's detention is justified by clear and convincing evidence of flight risk or danger,

28

                            16

1 │ taking into account whether alternatives to detention could sufficiently mitigate that risk.

2 │ 49. For these reasons, Petitioner's ongoing prolonged detention without a hearing

3 │ violates due process.

4 │ **PRAYER FOR RELIEF**

5 │ WHEREFORE, Petitioner respectfully requests that this Court:

6 │ 1) Assume jurisdiction over this matter;

7 │ 2) Issue a Writ of Habeas Corpus, hold a hearing before this Court if warranted,

8 │ determine that Petitioner's detention is not justified because the government has

9 │ not established by clear and convincing evidence that Petitioner presents a risk of

10 │ flight or danger in light of available alternatives to detention, and order

11 │ Petitioner's release (with appropriate conditions of supervision if necessary),

12 │ taking into account Petitioner's ability to pay a bond;

13 │ 3) In the alternative, issue a Writ of Habeas Corpus and order Petitioner's release

14 │ within 30 days unless Respondents schedule a hearing before an immigration

15 │ judge where: (1) to continue detention, the government must establish by clear

16 │ and convincing evidence that Petitioner presents a risk of flight or danger, even

17 │ after consideration of alternatives to detention that could mitigate any risk that

18 │ Petitioner's release would present; and (2) if the government cannot meet its

19 │ burden, the immigration judge order Petitioner's release on appropriate

20 │ conditions of supervision, taking into account Petitioner's ability to pay a bond;

21 │ 4) Issue a declaration that Petitioner's ongoing prolonged detention violates the Due

22 │ Process Clause of the Fifth Amendment;

23 │ 5) Award Petitioner his costs and reasonable attorneys' fees in this action as

24 │ provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

25 │ 6) Grant such further relief as the Court deems just and proper.

17

01/10/2025
Date [*Fecha*]

ABUBAKAR ABDUL-SAMED
Printed Name [*Nombre Impreso*]

AS
Signature [*Firma*]

Detained in ICE Custody at: [check one / marque uno]

☐    **Mesa Verde Detention Facility**, 425 Golden State Ave, Bakersfield, CA 93301

☒    **Golden State Annex**, 611 Frontage Road, McFarland, CA 93250

18

1    Name / Nombre: _____

2    A Number / Número A: _____

3

4    Address / Dirección: _____

5    _____

6

7    **PRO SE**

8                    <u>UNITED STATES DISTRICT COURT</u>

9              <u>FOR THE EASTERN DISTRICT OF CALIFORNIA</u>

10   _____

11

12   _____

13   [Full Name / Nombre Completo]

14                                    Petitioner,

15                    v.

16                                            Case No. _____

     Warden of the _____
17   Detention Facility, Current or Acting Field    **Motion for Appointment of Counsel**
     Office Director, San Francisco Field Office,   **Pursuant to 18 U.S.C. § 3006A**
18   United States Immigration   and Customs
     Enforcement; Current or Acting Director,
19   United States Immigration  and Customs
     Enforcement; Current or Acting Secretary,
20   United States Department of Homeland
     Security; and Current or Acting United States
21   Attorney General,

22                                    Respondents.

23   _____

24

25        Petitioner [your name / *su nombre*] _____ has

26   filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging Petitioner's

27   indefinite detention by Respondents. Petitioner was detained by Immigration and Customs

28

                                    1

1  Enforcement (ICE) on or about [date / *el mes y año en que comenzó su detención por ICE*]

2  _____. Petitioner has remained in ICE custody since that date.

3  Petitioner's removal proceedings remain pending.

4         The concurrently filed petition for writ of habeas corpus sets forth Petitioner's eligibility

5  for a writ of habeas corpus ordering Petitioner's release.

6         Petitioner moves the Court to appoint counsel to represent Petitioner in this case. The

7  Court may appoint counsel in a habeas action when the "interests of justices so require." 18

8  U.S.C. § 3006A(a)(2)(B). Here, Petitioner has a strong chance of success on the merits as

9  explained in the concurrently filed petition for writ of habeas corpus. However, given the

10  complexity of the law on immigration detention and Petitioner's status as a detained immigrant,

11  Petitioner would have great difficulty presenting the case without the assistance of counsel. For

12  these reasons, Petitioner respectfully requests that the Court appoint counsel.

13

14

15  _____        _____

16  Date [*Fecha*]                          Printed Name [*Nombre Impreso*]

17                                        _____

18                                        Signature [*Firma*]

19

20

21

22

23

24

25

26

27

28

1
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

2

**INSTRUCTIONS FOR FILING AN APPLICATION TO PROCEED IN FORMA
PAUPERIS BY A PRISONER UNDER 28 U.S.C. § 1915**

3

4
*INSTRUCCIONES PARA UNA APLICACION PARA PRISIONERO INDIGENTE*

5

6

7
        You must submit to the court a completed Prisoner's Application to Proceed In Forma
Pauperis if you are unable to pay the entire filing fee and/or if you are asking to be appointed a

8
free attorney. Your application must include copies of the prisoner trust account statement
showing transactions for the last six months and a certificate of funds in prisoner's account,

9
signed by an authorized officer of the institution. Please write your answers in English.

10

11
        *Necesita entregar al Tribunal una Aplicación Para Prisionero Indigente (**Prisoner's
Application to Proceed In Forma Pauperis**) si no puede pagar la tarifa y/o está aplicando por*

12
*un abogado gratuito. La aplicación necesita incluir una copia del estado de cuenta de su cuenta
de prisionero (commissary) y ser firmado por un oficial del centro de detención. Por favor*

13
*escriba sus respuestas en inglés.*

14

15

16
**Habeas Actions**

17
        The fee for filing a petition for a writ of habeas corpus is $5 ($5 filing fee plus $0

18
administrative fee). If you are granted leave to proceed in forma pauperis, you will not be
required to pay any portion of this fee. If you are not granted leave to proceed in forma pauperis,

19
you must pay the fee in one payment and not in installments.

20

21
        *La tarifa para entregar una petición Habeas es $5. Si su Aplicación Para Prisionero
Indigente es aprobada, no necesitará pagar la tarifa. Si su Aplicación Para Prisionero Indigente*

22
*es negada, necesitará pagar la tarifa.*

23

24

25

26

27

28



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**ADELANTO IMMIGRATION COURT**

Respondent Name:
    ABDUL SAMED, ABUBAKAR

To:
    ABDUL SAMED, ABUBAKAR
    GOLDEN STATE ANNEX
    611 FRONTAGE RD
    MCFARLAND, CA 93250

A-Number:
240170023
Riders:
In Custody Redetermination Proceedings

Date:
12/03/2024

### ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because
Respondent already had a bond hearing on August 22, 2024. At that hearing, the Court denied Respondent's bond request since it did not have jurisdiction to set bond as Respondent is an arriving alien. Respondent has not established a change of circumstances since this hearing. Moreover, he is still an arriving alien, so the Court still does not have jurisdiction to set bond.

☐ Granted. It is ordered that Respondent be:
    ☐ released from custody on his own recognizance.
    ☐ released from custody under bond of $
    ☐ other:

☐ Other:

Immigration Judge: BARRETT, PATRICK 12/03/2024

Appeal:    Department of Homeland Security:  ☐ waived   ☑ reserved
           Respondent:                      ☐ waived   ☑ reserved
Appeal Due: 01/02/2025

## Certificate of Service

This document was served:
Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable
To: [ ] Noncitizen | [ E ] Noncitizen c/o custodial officer | [ ] Noncitizen's atty/rep. | [ E ] DHS
Respondent Name : ABDUL SAMED, ABUBAKAR | A-Number : 240170023
Riders:
Date: 12/03/2024 By: NARANJO, MARIA, Court Staff

```
============================================================
= Inmate: ABUBAKAR ABDUL SAM                               =
= Inmate ID: 240170023                                     =
= Location: B 01                                           =
= Total Transactions Printed: 33                           =
= Printed: 12/23/2024 10:41 am PST                         =
============================================================
```

| Type | Date | Amount | Running Total |
|------|------|--------|---------------|
| Order | 12/16/2024 03:58 pm PST | -$5.63 | $20.18 |
| Telmate<br>Telmate ID: 1858775001 | 12/13/2024 12:15 pm PST | -$5.00 | $25.81 |
| Order | 12/09/2024 03:24 pm PST | -$5.42 | $30.81 |
| Order | 12/02/2024 02:50 pm PST | -$8.94 | $36.23 |
| Return<br>Added By:  Diaz | 11/27/2024 05:50 pm PST | $0.98 | $45.17 |
| Order | 11/25/2024 01:17 pm PST | -$7.06 | $44.19 |
| Inmate Fee<br>Added By: XXXXXX XXXXX<br>Postage - 1 manilla | 11/20/2024 09:42 am PST | -$2.04 | $51.25 |
| Order | 11/18/2024 02:31 pm PST | -$5.78 | $53.29 |
| Telmate<br>Telmate ID: 1840047421 | 11/07/2024 02:35 pm PST | -$5.00 | $59.07 |
| Order | 11/04/2024 01:39 pm PST | -$13.88 | $64.07 |
| Inmate Fee<br>Added By: XXXXXX XXXXX<br>Postage - 1 manilla | 10/31/2024 10:25 am PDT | -$2.31 | $77.95 |
| Deposit - Money Order<br>Added By: XXXXXX XXXXX<br>m/o #210002545 | 10/29/2024 03:45 pm PDT | $80.00 | $80.26 |
| Telmate<br>Telmate ID: 1816691921 | 09/23/2024 07:45 am PDT | -$5.00 | $0.26 |
| Order | 09/13/2024 05:19 pm PDT | -$12.77 | $5.26 |
| Return<br>Added By:  Diaz | 09/12/2024 08:28 am PDT | $7.35 | $18.03 |
| Order | 09/01/2024 11:42 pm PDT | -$7.35 | $10.68 |
| Order | 08/26/2024 08:05 pm PDT | -$9.49 | $18.03 |
| Order | 08/12/2024 06:24 pm PDT | -$5.64 | $27.52 |
| Inmate Fee<br>Added By: XXXXXX XXXXX<br>Postage - 1 manilla | 08/06/2024 10:38 am PDT | -$2.04 | $33.16 |
| Order | 08/05/2024 04:39 pm PDT | -$15.38 | $35.20 |
| Order | 07/29/2024 08:31 pm PDT | -$4.92 | $50.58 |
| Order | 07/22/2024 02:46 pm PDT | -$11.43 | $55.50 |
| Telmate<br>Telmate ID: 1784237991 | 07/22/2024 01:35 pm PDT | -$5.00 | $66.93 |
| Order | 07/15/2024 02:42 pm PDT | -$7.24 | $71.93 |
| Order | 07/07/2024 02:42 pm PDT | -$12.83 | $79.17 |
| Telmate<br>Telmate ID: 1770792181 | 06/26/2024 08:25 pm PDT | -$10.00 | $92.00 |
| Deposit - Money Order<br>Added By: L XXXXX<br>MO #19-648681137 | 06/26/2024 10:10 am PDT | $100.00 | $102.00 |
| Order | 05/24/2024 03:35 pm PDT | -$7.90 | $2.00 |
| Order | 05/09/2024 04:11 pm PDT | -$7.90 | $9.90 |
| Order | 04/16/2024 11:57 am PDT | -$5.30 | $17.80 |
| Order | 03/30/2024 03:34 pm PDT | -$9.44 | $23.10 |
| Order | 03/22/2024 12:38 pm PDT | -$7.46 | $32.54 |
| Deposit - Cash<br>Added By: XXXXXX XXXXX<br>cash 2*$20 | 03/15/2024 01:26 pm PDT | $40.00 | $40.00 |

```
============================================================
= Printing Completed                                       =
= Summary of Transactions                                  =
= Deposit Cash Total: $40.00                               =
= Deposit Money Order Total: $180.00                       =
= Order Total: -$171.76                                    =
= Return Total: $8.33                                      =
= Inmate Fee Total: -$6.39                                 =
============================================================
```

ABDUL SAMED, ABUBAKAR    #240170023    Location: ICE - B-NA-01 - N/A-56 -    DOB: 4/30/1993 (31y)
LOW

| Service | Provider | Collected Date | Result Date |
|---|---|---|---|
| HAV, HBV, HCV | OWOLABI, O | 03/18/2024 4:30A | 03/29/2024 8:08A |
| Hep A Ab, IgM | OWOLABI, O | 03/18/2024 4:30A | 03/29/2024 8:08A |
| HAV, HBV, HCV | OWOLABI, O | 03/18/2024 4:30A | 03/29/2024 8:08A |
| RPR | OWOLABI, O | 03/18/2024 4:30A | 03/20/2024 7:06A |
| HIV Ab/p24 Ag with Reflex | OWOLABI, O | 03/18/2024 4:30A | 03/20/2024 6:07A |
| Microscopic Examination | OWOLABI, O | 03/18/2024 4:30A | 03/20/2024 6:07A |
| Urinalysis, Complete | OWOLABI, O | 03/18/2024 4:30A | 03/20/2024 6:07A |
| Comp. Metabolic Panel (14) | OWOLABI, O | 03/18/2024 4:30A | 03/20/2024 2:05A |
| CBC With Differential/Platelet | OWOLABI, O | 03/18/2024 4:30A | 03/19/2024 13:07P |

## Vitals Summary

| Vitals Type Desc | Vital Information | Recorded By | Date Taken |
|---|---|---|---|
| BODY TEMPERATURE | 98.6 °F | RAMIREZ RUBIO, ALICIA | 11/22/2024 1:49:56 PM |
| BODY TEMPERATURE | 97.0 °F | CHEHAL, RAVINDER | 6/17/2024 7:27:44 AM |
| BODY TEMPERATURE | 97.9 °F | ALMKLOV, ERIK | 6/17/2024 7:23:23 AM |
| BODY TEMPERATURE | 97.6 °F | OWOLABI, OLUFEMI | 3/25/2024 11:06:59 AM |
| BODY TEMPERATURE | 97.6 °F | OWOLABI, OLUFEMI | 3/25/2024 11:00:25 AM |
| BODY TEMPERATURE | 98.2 °F | VALDEZ, ESMERALDA | 3/15/2024 12:39:23 AM |
| PULSE RATE | 67 BPM | RAMIREZ RUBIO, ALICIA | 11/22/2024 1:49:56 PM |
| PULSE RATE | 78 BPM | CHEHAL, RAVINDER | 6/17/2024 7:27:44 AM |
| PULSE RATE | 55 BPM | ALMKLOV, ERIK | 6/17/2024 7:23:23 AM |
| PULSE RATE | 78 BPM | OWOLABI, OLUFEMI | 3/25/2024 11:06:59 AM |
| PULSE RATE | 78 BPM | OWOLABI, OLUFEMI | 3/25/2024 11:00:25 AM |
| PULSE RATE | 66 BPM | VALDEZ, ESMERALDA | 3/15/2024 12:39:23 AM |
| BLOOD PRESSURE | 138/91 mmHg | HERNANDEZ, IRENE | 12/11/2024 7:10:34 PM |
| BLOOD PRESSURE | 148/92 mmHg | FELIX, KIMBERLY | 12/9/2024 7:25:31 PM |
| BLOOD PRESSURE | 157/91 mmHg | BENNETT, SUSAN | 12/6/2024 8:48:15 PM |
| BLOOD PRESSURE | 144/86 mmHg | BENNETT, SUSAN | 12/2/2024 8:08:55 PM |
| BLOOD PRESSURE | 138/85 mmHg | FELIX, KIMBERLY | 11/29/2024 7:57:21 PM |
| BLOOD PRESSURE | 140/85 mmHg | CERRADA, MELANIE | 11/27/2024 8:56:59 PM |
| BLOOD PRESSURE | 146/86 mmHg | BENNETT, SUSAN | 11/25/2024 7:55:10 PM |
| BLOOD PRESSURE | 147/94 mmHg | RAMIREZ RUBIO, ALICIA | 11/22/2024 1:49:56 PM |

EHR Clinical Report

**Facility:**     CAGS - GOLDEN STATE ICE PROCESSING

**Created By:**    WILKERSON, ASHLEY

**Created On:**    01/06/2025 8:34:06 AM

**ABDUL SAMED, ABUBAKAR**          **#240170023**     **Location:** ICE - B-NA-01 - N/A-56 - LOW          **DOB:** 4/30/1993 (31y)

| | | | |
|---|---|---|---|
| BLOOD PRESSURE | 125/70 mmHg | CHEHAL, RAVINDER | 6/17/2024 7:27:44 AM |
| BLOOD PRESSURE | 133/83 mmHg | ALMKLOV, ERIK | 6/17/2024 7:23:23 AM |
| BLOOD PRESSURE | 111/66 mmHg | OWOLABI, OLUFEMI | 3/25/2024 11:06:59 AM |
| BLOOD PRESSURE | 111/66 mmHg | OWOLABI, OLUFEMI | 3/25/2024 11:00:25 AM |
| BLOOD PRESSURE | 140/80 mmHg | VALDEZ, ESMERALDA | 3/15/2024 12:39:23 AM |
| RESPIRATORY RATE | 17 RPM | RAMIREZ RUBIO, ALICIA | 11/22/2024 1:49:56 PM |
| RESPIRATORY RATE | 16 RPM | CHEHAL, RAVINDER | 6/17/2024 7:27:44 AM |
| RESPIRATORY RATE | 14 RPM | ALMKLOV, ERIK | 6/17/2024 7:23:23 AM |
| RESPIRATORY RATE | 16 RPM | OWOLABI, OLUFEMI | 3/25/2024 11:06:59 AM |
| RESPIRATORY RATE | 16 RPM | OWOLABI, OLUFEMI | 3/25/2024 11:00:25 AM |
| RESPIRATORY RATE | 14 RPM | VALDEZ, ESMERALDA | 3/15/2024 12:39:23 AM |
| WEIGHT | 163 lbs | RAMIREZ RUBIO, ALICIA | 11/22/2024 1:49:56 PM |
| WEIGHT | 161 lbs | CHEHAL, RAVINDER | 6/17/2024 7:27:44 AM |
| WEIGHT | 161 lbs | ALMKLOV, ERIK | 6/17/2024 7:23:23 AM |
| WEIGHT | 161 lbs | OWOLABI, OLUFEMI | 3/25/2024 11:06:59 AM |
| WEIGHT | 161 lbs | OWOLABI, OLUFEMI | 3/25/2024 11:00:25 AM |
| WEIGHT | 160 lbs | VALDEZ, ESMERALDA | 3/15/2024 12:39:24 AM |
| O2 SATS | 99 | RAMIREZ RUBIO, ALICIA | 11/22/2024 1:49:56 PM |
| O2 SATS | 97 | CHEHAL, RAVINDER | 6/17/2024 7:27:44 AM |
| O2 SATS | 99 | ALMKLOV, ERIK | 6/17/2024 7:23:23 AM |
| O2 SATS | 99 | OWOLABI, OLUFEMI | 3/25/2024 11:06:59 AM |
| O2 SATS | 99 | OWOLABI, OLUFEMI | 3/25/2024 11:00:25 AM |
| O2 SATS | 99 | VALDEZ, ESMERALDA | 3/15/2024 12:39:23 AM |
| HEIGHT | 5-8 ft/in | OWOLABI, OLUFEMI | 3/25/2024 11:06:59 AM |
| HEIGHT | 5-8 ft/in | VALDEZ, ESMERALDA | 3/15/2024 12:39:23 AM |

**CIWA/COWS Scores**

**Next of Kin**

No Next Of Kin Indicated

**Patient Messages**

**EHR Clinical Report**

**Facility:** CAGS - GOLDEN STATE ICE PROCESSING

**Created By:** WILKERSON, ASHLEY

**Created On:** 01/06/2025 8:34:06 AM

4 of 6

# Request #506555031

**Profile Photo:**



**Audit Photo:**



### Resident Info

Name: ABDUL SAMED ABUBAKAR (1993-04-30)
Booking Number: 240170023
Nationality: dk
Submitted Date: 11/21/24 13:17
Submitted Room: B01/B1
Current Room: B01/B1
Facility: GEO Golden State Annex
MAC ID: 48:46:C1:23:2E:29
Device ID: 4846C1232E29

### Form Info

Category: Medical
Form: Medical - Appointment Visit (sick call)
Internal Tag: Routine

### Request Info

Status: CLOSED **by** I. Hernandez
Facility Deadline: 11/26/24 23:59

**Summary of Request:**

Hi

**Details of Request:**

**What is your medical problem? Cuál es su problema médico?:**
Please I'm experiencing runny nose and sneezing, and I need your help.thank u

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| **11/22/24 00:12** | **I. Hernandez** | **Staff Response** | **You will be placed on nursing sick line.** |
| 11/22/24 00:12 | I. Hernandez | Changed Status | From 'Open' to 'Closed' |
| 11/22/24 00:11 | I. Hernandez | Set Tag | Changed tag to Routine |
| **11/21/24 13:17** | **ABDUL SAMED ABUBAKAR** | **Submitted New** | **Hi** |

Done 11/22/24

AR

## Document Notes



| | |
|---|---|
| **Diagnosis** | Encounter for screening, unspecified, Essential (primary) hypertension |
| **Allergies** | NO KNOWN DRUG ALLERGY |
| **Agency** | ICE INMATES |
| **Facility** | CAGS - GOLDEN STATE ICE PROCESSING |
| **Race** U | **Ethnicity** NH | **Height** 5'.8" |
| **DOB** 04/30/1993 | **Gender** M | **Weight** 163 |

**ICE - B-NA-01 - N/A-56 - LOW**
**ABDUL SAMED, ABUBAKAR - 240170023**

## Document Details

| | | | |
|---|---|---|---|
| **Title:** | SICK CALL - ROUTINE  REQUEST FOR HEALTH SERVICES | **Uploaded By:** | BENTING, XOCHITL |
| **Group:** | Medical | **Uploaded On:** | 11/25/2024 |
| **Category:** | Sick Call | **Signed By:** | |
| **Provider:** | SICK CALL - ROUTINE  REQUEST FOR HEALTH SERVICES | **Signed On:** | |
| **Files:** | abdul.pdf | | |

## Document Notes

No records match the criteria you have selected.

# Request #458376171

**Profile Photo:**



**Audit Photo:**



**Resident Info**

Name: ABDUL SAMED ABUBAKAR (1993-04-30)
Booking Number: 240170023
Nationality: dk
Submitted Date: 06/16/24 15:25
Submitted Room: B02/B2
Current Room: B02/B2
Facility: GEO Golden State Annex
MAC ID: 4846C122E20D
Device ID: 4846C122E20D

**Form Info**

Category: Medical
Form: Medical - Appointment Visit (sick call)
Internal Tag: Routine

**Request Info**

Status: CLOSED **by** M. Padilla
Facility Deadline: 06/19/24 23:59

**Summary of Request:**

I need medication

**Details of Request:**

**What is your medical problem? Cuál es su problema médico?:**
Am sneezing and my nose is running so much

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 06/17/24 01:24 | M. Padilla | Staff Response | You will be scheduled for the nursing line. Thank you |
| 06/17/24 01:24 | M. Padilla | Changed Status | From 'Open' to 'Closed' |
| 06/17/24 01:23 | M. Padilla | Set Tag | Changed tag to Routine |
| 06/16/24 15:25 | ABDUL SAMED ABUBAKAR | Submitted New | I need medication |

17020

Seen
6/17/24

E. Almklov RN

## Document Notes

| | | | | | |
|---|---|---|---|---|---|
| **Diagnosis** | Encounter for screening, unspecified, Essential (primary) hypertension | | | | |
| **Allergies** | NO KNOWN DRUG ALLERGY | | | | |
| **Agency** | ICE INMATES | | | | |
| **Facility** | CAGS - GOLDEN STATE ICE PROCESSING | | | | |
| **Race** | U | **Ethnicity** NH | | **Height** 5' 8" | |
| **DOB** | 04/30/1993 | **Gender** M | | **Weight** 163 | |



### ICE - B-NA-01 - N/A-56 - LOW
### ABDUL SAMED, ABUBAKAR - 240170023

## Document Details

| | | | |
|---|---|---|---|
| **Title:** | SICK CALL - ROUTINE REQUEST FOR HEALTH SERVICES | **Uploaded By:** | MEDINA, KIANA |
| **Group:** | Medical | **Uploaded On:** | 6/26/2024 |
| **Category:** | Sick Call | **Signed By:** | |
| **Provider:** | SICK CALL - ROUTINE REQUEST FOR HEALTH SERVICES | **Signed On:** | |
| **Files:** | Scan Jun 26, 2024.pdf | | |

## Document Notes

No records match the criteria you have selected.

---

**1**   Greeting pleasantries,

My name is Jovon Colley born 12/31/91 in Jamaica Spanish Town, St. Catherine A#216-47th-042, I am currently detained at the Golden State Annex facility.

**2**   I am constructing this letter, in favor for Abubakar Abdul-Samed, born _____ in Ghana, A_____ I have been in the same dorm with Abubakar for the past 6 months & like myself he's a decent man in hopes of uniting with his family in america has U.S.C.I.S had granted positive credible fear.

**3**   The Golden State Annex facility is operated by G.E.O private for profit agency, we have been faced with inhumane, discrimination & degrading treatment.
Numerous times detainees such as myself have discovered bugs, worms & other foriegn objects in our food, the bathroom is filty, the vents only when it's time for inspection.

**4**   Medical system is very poor as the only remedy given is Ibuprofen. ICE officials comes one time per week at 10AM when its count time & most time detainees cant get to speak with them.
facility staff treat us like animals, sometimes threaten us with deportation & segregation.

1

5.) for these reason stated above, I declare that its true with the hopes of Abubakar seeking relief through habeas from this honorable court be granted.

I pray this court grants mercy on Abubakar Abdul-Samed A#240-170-023, written on 1/10/25, Thank you for your time & consideration

Jovon W. Colley
A#216-474-042

Date 1/10/25

2

(1) My name is bashiru Ibrahim, born 02/02/1991 In Gehana A#249386591. I am detained here at Golden State Annex. Today Is January 3rd 2025, I am writing this letter for Abubakar Abdul-Samed A#240170023.

(2) In detention at this facility we face discrimination, Inhumane and very bad treatment. I have been detained for five "5" months with Abubakar.
The bathroom shower Curtains have not been washed Since I came here, there's fungus, bacterial and germs In the nest area, the vents Is blowing dust with no face mask provided.

(3) personally I have found worms and bugs In my food On 10/08/24 that makes me now afraid to eat what Is given from the kitchen, this treatment Is degrading and against human right.

(4) Medical Assistance do not attend to Sick request In a timely manner. often times detainees are given Just Ibuprofen for all Sickness.
The recreation yard Is like the desert with Only dirt blowing In our ears, nose and eyes, that Is Constantly giving us virus/Infection.

(5) Ice Is not giving us a fair Custody review as 100% of detainees were named flight risk. ICE officers Come to facility One time per week at Count time when no One Cas Speak with Our assigned officers.

(6) Everything Is Correct and true In light of the above mentioned facts of abuse, negligent and bad treatment here at

**1**

Golden State Annex,

I Bashiru Ibrahim A# 249386591 hope this letter is
recieved and considered in the favour of Abubakar, Thank
you for your time and patience.

Name: Bashiru Ibrahim
A#: 249386591
Signature: He
Date: 01/03/2025

2