UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABUBAKAR ABDUL-SAMED,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | Case No. 1:25-cv-00098-SAB-HC<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS, DENYING RESPONDENT'S MOTION TO DISMISS, GRANTING IN PART PETITIONER'S MOTION FOR RELEASE, AND DIRECTING RESPONDENT TO PROVIDE PETITIONER WITH BOND HEARING BEFORE IMMIGRATION JUDGE<br><br>(ECF Nos. 9, 10) |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States Magistrate Judge. (ECF Nos. 6–8.)

**I.**

**BACKGROUND**

**A. Immigration Proceedings**

Petitioner is a native and citizen of Ghana. (ECF No. 9-1 at 3.[1]) On March 13, 2024, Petitioner arrived at San Francisco International Airport ("SFO") aboard Cathay Pacific Airways flight 870 ("Flight 870"). Petitioner presented himself to U.S. Customs and Border Patrol for

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

inspection. When asked for his travel documents, Petitioner stated that he did not have a passport or any other document to show. Petitioner was detained and, upon questioning, admitted that he boarded Flight 870 with a fraudulent Danish passport that he purchased in Ghana. Petitioner admitted he flushed the fraudulent Danish passport down the airplane toilet while in flight enroute to SFO. (ECF No. 9-1 at 3, 8–10.)

The Department of Homeland Security ("DHS") detained Petitioner and initiated removal proceedings, charging Petitioner with removability under sections 212(a)(7)(A)(i)(I) and 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA"), as an arriving alien without valid entry documents and who sought to procure admission into the United States by fraud or willfully misrepresenting a material fact. (ECF No. 9-1 at 3, 12, 14.)

At the first master calendar hearing in removal proceedings on May 7, 2024, Petitioner requested and received a continuance to apply for relief from removal and seek counsel. Subsequently, Petitioner requested and received at least six additional continuances.[2] (ECF No. 9-1 at 3–5.) On October 16, 2024, Petitioner submitted an application for asylum and withholding of removal under INA § 241(b)(3) and withholding of removal under the Convention Against Torture ("CAT"). (ECF No. 9-1 at 4.) An immigration judge ("IJ") has sustained the removal charges against Petitioner, who admitted the factual allegations in the Notice to Appear ("NTA") and conceded removability as charged. (ECF No. 9-1 at 5.)

Based on the record currently before the Court, Petitioner's next hearing before an IJ in removal proceedings was scheduled for April 9, 2025, and Petitioner's applications for relief from removal are still pending. (ECF No. 9-1 at 5, 30.)

**B. Requests for Release on Parole**

On July 30, 2024, Petitioner submitted a request for release on parole to DHS's Enforcement and Removal Operations ("ERO") Bakersfield sub-office's Detained Unit, which deemed the request incomplete and requested Petitioner to submit documentation. (ECF No. 9-1 at 4.) On December 17, 2024, Petitioner submitted additional documents in support of his request

---

[2] Deportation Officer Munñoz declares that "Petitioner requested and received seven additional continuances," but the declaration lists only six additional continuances after the first continuance. (ECF No. 9-1 at 3–5.)

for release on parole to the ERO Bakersfield sub-office's Detained Unit, which again deemed the request incomplete and requested Petitioner to submit documentation. (ECF No. 9-1 at 4–5.)

On February 28, 2025, Petitioner inquired whether ERO had completed a parole review for his case. On March 18, 2025, ERO conducted a review despite not having been provided all the documentation required for parole review. Petitioner's request was denied because the documents provided did not support parole release for an urgent humanitarian reason or significant public benefit. (ECF No. 9-1 at 5.)

### C. Requests for Custody Redetermination in Immigration Court

On August 13, 2024, Petitioner requested a custody redetermination hearing in bond proceedings with an IJ. (ECF No. 9-1 at 4.) On August 22, 2024, an IJ denied Petitioner's request because Petitioner "is classified as an arriving alien, and the Court lacks jurisdiction for his request for bond under INA s. 236(a)." (Id. at 4, 18.) On November 4, 2024, Petitioner requested a second custody redetermination hearing in bond proceedings with an IJ. (Id. at 4.) On November 8, 2024, an IJ denied Petitioner's request for a change in custody status, stating:

> [Petitioner] already had a bond hearing on August 22, 2024. At that hearing, the Court denied [Petitioner]'s bond request since it did not have jurisdiction to set bond as [Petitioner] is an arriving alien. [Petitioner] has not established a change of circumstances since this hearing. Moreover, he is still an arriving alien, so the Court still does not have jurisdiction to set bond.

(ECF No. 9-1 at 21.)

Subsequently, Petitioner requested custody redetermination hearings in bond proceedings with an IJ on December 3, 2024 and February 7, 2025. (ECF No. 9-1 at 4, 5.) Again, the IJ denied bond, finding that the immigration court still lacked jurisdiction to set bond because Petitioner is an arriving alien and Petitioner had not established a change of circumstances since his prior request. (Id. at 24, 27.)

### D. Federal Habeas Proceedings

On January 22, 2025, Petitioner filed the instant petition for writ of habeas corpus, challenging his prolonged immigration detention on procedural due process grounds. (ECF No.

///

///

3

1.) On March 28, 2025, Respondent filed a motion to dismiss. (ECF No. 9.) On May 5, 2025, Petitioner filed a motion requesting release.[3] (ECF No. 10.)

## II.

## DISCUSSION

**A.  Overview of Caselaw Regarding Immigration Detention Statutes**

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Id. (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Id. "Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Id. at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." Id. "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

Here, Respondent asserts that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). (ECF No. 9 at 2.) "Under . . . 8 U.S.C. § 1225, an alien who 'arrives in the

---

[3] In the motion, Petitioner stated he had not received any response to the petition from Respondent. The following day, Respondent filed a certificate of service indicating that Respondent's motion to dismiss was re-served and mailed to Petitioner. (ECF No. 11.)

4

1  United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an
2  applicant for admission.'" Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting 8
3  § 1225(a)(1)). "Applicants for admission must 'be inspected by immigration officers' to ensure
4  that they may be admitted into the country consistent with U.S. immigration law." Jennings, 583
5  U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). "Section 1225(b)(1) applies to aliens initially
6  determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation."
7  Jennings, 583 U.S. at 287. Section "1225(b)(1) . . . authorize[s] the detention of certain aliens."
8  Id.

> Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii).

13 Jennings, 583 U.S. at 287. "[A]pplicants for admission may be temporarily released on parole
14 'for urgent humanitarian reasons or significant public benefit.'" Id. at 288 (quoting 8 U.S.C.
15 § 1182(d)(5)(A)) (citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). "The Attorney General [has]
16 interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to require mandatory detention without bond hearings
17 for asylum seekers who were initially subject to expedited removal but later transferred to full
18 removal proceedings after establishing a credible fear." Padilla v. U.S. Immigr. & Customs
19 Enf't, 704 F. Supp. 3d 1163, 1168 (W.D. Wash. 2023) (citing Matter of M-S-, 27 I. & N. Dec.
20 509, 515–17 (2019)).

21    "[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have
22 grappled in piece-meal fashion with whether the various detention statutes may authorize
23 indefinite or prolonged detention of detainees and, if so, may do so without providing a bond
24 hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting
25 Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis,
26 two noncitizens, who had been ordered removed but whose removal could not be effectuated due
27 to lack of a repatriation treaty or because their designated countries refused to accept them,
28 challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention

beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[4] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized

---

[4] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

6

determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[5] Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

In Jennings v. Rodriguez, the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without

---

[5] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

7

1 any process is constitutional or that those who founded our democracy precisely to protect
2 against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d
3 252, 255, 256 (9th Cir. 2018).

4 Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require
5 a bond hearing before an IJ after six months of detention for an alien whose release or removal is
6 not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a
7 bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762,
8 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman
9 Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising
10 from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213
11 L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory
12 interpretation in *Aleman Gonzalez*," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir.
13 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the
14 Government to provide bond hearings before immigration judges after six months of detention,
15 with the Government bearing the burden of proving by clear and convincing evidence that a
16 detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596
17 U.S. at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

18 "[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remain[ed]
19 undetermined whether the Due Process Clause requires additional bond procedures under *any*
20 immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz, which
21 concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond
22 hearing before an IJ at which the government would bear the burden of proof by clear and
23 convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due
24 process does not require the procedures Rodriguez Diaz would have us impose" because
25 "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez
26 Diaz has not shown that these procedures violate due process, either facially or as applied." Id.

27 However, the Ninth Circuit has yet to take a position on whether due process requires a
28 bond hearing for noncitizens for whom detention is mandatory. See Martinez v. Clark, 36 F.4th

1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for aliens detained under § 1226(c) is not before us today. And we take no position on that question."), vacated and remanded on other grounds, 144 S. Ct. 1339 (2024); Avilez, 69 F.4th at 538 (declining to make a determination on whether due process required a bond hearing for noncitizen detained under § 1226(c) and remanding to district court for consideration of due process claim). The Ninth Circuit has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez, 36 F.4th at 1223 (citation omitted).

**B. Procedural Due Process**

1. Bright-Line Rule

Petitioner asserts that "[d]etention without a bond hearing is unconstitutional when it exceeds six months." (ECF No. 1 at 10.) Respondent notes that in Jennings, the Supreme Court rejected the Ninth Circuit's application of the constitutional avoidance canon to find a statutory right to periodic bond hearings every six months. (ECF No. 9 at 5.) Three circuit courts of appeals have "reject[ed] a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." Black v. Decker, 103 F.4th 133, 150 (2d Cir. 2024) (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The Court will follow this line of cases and declines "to adopt a presumption of reasonableness or unreasonableness of any duration of detention." Black, 103 F.4th at 150 (internal quotation mark omitted) (quoting German Santos, 965 F.3d at 211).

2. *Demore*

Respondent contends that "the U.S. Constitution does not require the United States to release a non-citizen during the pendency of removal proceedings when the non-citizen, as in this case, has entered the United States unlawfully, has employed fraud and false pretenses

9

(identity theft) to unlawfully enter, has entered without permission or application, and thereafter demanded asylum or other excuse to remain," seemingly relying on Demore v. Kim. (ECF No. 9 at 4–5.)

As noted above, Demore rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) and "said nothing about whether due process may *eventually* require a hearing." Black, 103 F.4th at 149. In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court explicitly stated that as-applied constitutional challenges to 8 U.S.C. § 1226(c) are not foreclosed. Preap, 586 U.S. at 420. Furthermore, Demore does not directly address whether § 1225(b) as applied to Petitioner is unconstitutional. Therefore, Demore does not preclude relief and dismissal is not warranted on this ground.

Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid, 17 F.4th at 7 (alterations in original) (citation omitted). Accord Black, 103 F.4th at 138 ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos, 965 F.3d at 209–10 (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Additionally, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (citation omitted), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

Based on the foregoing, the Court finds that unreasonably prolonged mandatory immigration detention without an individualized bond hearing violates due process. Accordingly, Respondent's motion to dismiss is denied. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

3. *Lopez* Test

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (noting Mathews factors more suited to determining whether due process requires a second bond hearing and rejecting other multi-factor tests). Although Lopez concerned mandatory detention under § 1226(c), the Court finds Lopez's reasoning applies equally to mandatory detention under § 1225(b). Accordingly, the Court will apply the Lopez test.[6]

---

[6] In the petition, Petitioner applies the Mathews v. Eldridge, 424 U.S. 319 (1976) test, and alternatively, the multi-factor reasonableness test adopted by the Third Circuit in German Santos, 965 F.3d 203. (ECF No. 1 at 11.) Respondent addresses the Mathews factors in the motion to dismiss. (ECF No. 9 at 6–8.) Although the parties have not specifically addressed the Lopez factors, the Court will apply the Lopez test to the record currently before the Court.

11

### a. Total Length of Detention to Date

Petitioner has been in immigration detention since March 13, 2024—approximately sixteen months. Courts have found shorter lengths of mandatory immigration detention without a bond hearing to be unreasonable. See, e.g., Black, 103 F.4th at 137–38 (affirming district court judgment ordering bond hearing for petitioner detained seven months); Perera v. Jennings, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (granting TRO and ordering individualized bond hearing for petitioner detained almost two months); Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (granting preliminary injunction and ordering individualized bond hearing for petitioner detained more than eight months); Jarpa v. Mumford, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (granting habeas relief and ordering individualized bond hearing for petitioner detained nearly eleven months). But see De Oliveira Viegas v. Green, 370 F. Supp. 3d 443, 448–49 (D.N.J. 2019) ("As a general matter, courts in this District have found detention for a year, or just over a year, insufficient to support an as-applied challenge to a § 1226(c) detention post-Jennings.").

"In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (alteration in original) (quoting Muse v. Sessions, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). Here, Petitioner has been detained for one year and four months. Accordingly, the Court finds that the total length of detention factor weighs in favor of Petitioner.

### b. Likely Duration of Future Detention

"[A]s have nearly all the other courts to consider this issue . . . the starting point of the analysis is the length of detention—both how long the petitioner has been detained and *how long the detention is likely to last*." Gonzalez, 2019 WL 330906, at *5 (emphasis added) (collecting cases). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." German Santos, 965 F.3d at 211.

Here, based on the record currently before the Court, Petitioner's applications for relief from removal are still pending in the immigration court.

> The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. Among other things, an alien may apply for asylum on the ground that he or she would be persecuted if returned to his or her home country. § 1229a(b)(4); 8 C.F.R. § 1240.11(c) (2020). If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals. 8 U.S.C. §§ 1229a(c)(5), 1252(a).

Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020).

Although the Court recognizes that future events are difficult to predict, the Court nevertheless finds that in the event Petitioner's applications for relief from removal are denied, Petitioner's possible administrative appeal and judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner. See German Santos, 965 F.3d at 212 (finding that appeal of cancellation of removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); Banda, 385 F. Supp. 3d at 1119 (finding that appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing).

### c. Delays in Removal Proceedings Caused by Petitioner and Government

In immigration court, Petitioner has requested and received at least seven continuances to apply for relief from removal, seek counsel, and obtain documents to support his application for relief from removal. (ECF No. 9-1 at 3–5.) The government has not sought nor received any continuances. (Id. at 3.) Accordingly, the Court finds that the delay factor weighs against Petitioner.

4. Weighing the Factors

Both the length of detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118,[7] and the likely duration of future detention weigh in favor of finding continued detention unreasonable. The delay factor weighs against Petitioner, but "the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged

---

[7] Accord German Santos, 965 F.3d at 211 ("The most important factor is the duration of detention.")

13

detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition." Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). See Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) ("Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable."); Gonzalez, 2019 WL 330906, at *4 ("The government cites no authority for the proposition that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim and the Court is unaware of any.").

The Court appreciates that the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger. However, the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him *without a bond hearing*." Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (emphasis added), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). See Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). On the other hand, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" (quoting Singh, 638 F.3d at 1208)). Accordingly, the Court finds that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided a bond hearing.

///

///

## C. Remedy

In the petition, Petitioner requests this Court hold a hearing to "determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention," or in the alternative, order a bond "hearing before an immigration judge where . . . to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger[.]" (ECF No. 1 at 19.) In the motion for release, Petitioner requests release within seven days, or in the alternative, a bond hearing before an immigration judge where the government bears the burden of proving dangerousness or flight risk. (ECF No. 10.) Respondent has not addressed the issue of the appropriate relief available to Petitioner.

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. See Doe v. Becerra, 697 F. Supp. 3d 937, 948 (N.D. Cal. 2023) ("[C]ourts in this Circuit have regularly found that the IJ is the proper authority to conduct bond hearings and determine a detainee's risk of flight or dangerousness to the community." (citing Martinez, 36 F.4th at 1223 ("district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods"))); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program[.]").

The Court further finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)); Black, 103 F.4th at 159 (affirming district court's

1 order "requir[ing] the government to show at such a bond hearing, by clear and convincing
2 evidence, the need for Black's continued detention" under § 1226(c)); German Santos, 965 F.3d
3 at 214 (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the
4 Government bears the burden of persuasion by clear and convincing evidence. That evidence
5 must be individualized and support a finding that continued detention is needed to prevent him
6 from fleeing or harming the community"); Juarez, 2021 WL 2323436, at *8 (requiring bond
7 hearing to comport with requirements of Singh); Banda, 385 F. Supp. 3d at 1120–21 (same);
8 Djelassi v. ICE Field Off. Dir., 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (same);
9 Martinez, 2019 WL 5968089, at *11 (same and collecting cases). In the event Petitioner is
10 "determined not to be a danger to the community and not to be so great a flight risk as to require
11 detention without bond," the immigration judge should consider Petitioner's financial
12 circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103
13 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his
14 bond and establishing appropriate terms for his potential release, to consider his ability to pay
15 and alternative means of assuring appearance.").

### III.

### ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED IN PART and DENIED IN PART. The petition is GRANTED as to Petitioner's procedural due process claim and request for a bond hearing before an immigration judge. The petition is DENIED in all other respects.

2. Respondent's motion to dismiss (ECF No. 9) is DENIED.

3. Petitioner's motion requesting release (ECF No. 10) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Petitioner's request for a bond hearing before an immigration judge. The motion is DENIED in all other respects.

4. Within **thirty (30) days** of the date of service of this order, Respondent shall provide Petitioner with an individualized bond hearing before an immigration judge that complies

with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

IT IS SO ORDERED.

Dated:   **July 24, 2025**

STANLEY A. BOONE
United States Magistrate Judge